My name is David Ness, I'm with the Federal Defenders of Montana and I represent the appellant Solomon Simtob. As the Court is aware, this case involves a consolidated appeal of both a criminal conviction as well as a revocation of supervised release. The first issue raised by Mr. Simtob involved an issue involving the jury and whether or not the jury was tainted by what very well may have been a misapprehension on the part of one or more of the jurors that Mr. Simtob was staring at the jurors and trying to threaten them or in some way influence their verdict. It was brought to counsel's attention during an afternoon break of the first day of trial and on the second, on the morning prior to any further witnesses being to excuse that juror. The concern being, I guess I should clarify that, the or more than one juror who felt that Mr. Simtob had been trying to influence them. Now the exact information was what? The information imparted by the Court was that, as I recall the Court's words, that there had been a statement made by one of the jurors to one of the marshals that he or she felt that Mr. Simtob had been eyeballing him or her. And that was it? Was there any indication that they felt threatened? There was. The district court indicated and the juror felt threatened by this eyeballing. As I recall, there was a, the district court focused its attention on Mr. Simtob and seemed to treat it as a problem that he had and he denied that he was staring at anybody. And then the next day, wasn't it, the motion was made or the request was made for canvas or interrogation of the jury? There wasn't a specific motion made to canvas or interrogate the jury. The motion made was to excuse the juror or jurors that felt Mr. Simtob had been eyeballing. So the Court was not asked specifically to do anything other than just excuse the juror? It was not, except that, and I was the trial lawyer, and I acknowledge I did not technically make the right motion there. But Mr. Rosted apprised the Court of what the appropriate action should be. And Mr. Rosted apprised the Court that I think that the appropriate action would be to canvas the jurors. I knew somebody had raised it. So we review this for an abuse of discretion. In the Third and Sixth Circuits, similar allegations were made. And in both of those circuits, they suggested that if there's not an extraneous certainly the Sixth Circuit, if it's not an extraneous threat, if it's just internal courtroom behavior, they didn't fault the district judge for not specifically questioning the juror. And I noted in the Sixth Circuit they expressed the concern that to allow a defendant to manipulate, possibly manipulate the jury, would be a problem. So given the abuse of discretion standard and the district court's fairly wide latitude, what is it we should be doing with this at this stage of the proceeding? I think at the very least what this Court should do is remand it back for an evidentiary hearing to determine whether or not this did have any undue effect upon the jury's deliberations. In the Remel case, the Supreme Court case, the Supreme Court did exactly that after two years had passed. Was this the case where there was a split verdict? Mr. Simtop was acquitted of one of the charges, yes. So that fact cuts against your argument that there was prejudice. I would assume that a jury that was prejudiced would want to convict on every count before that. And I guess my response to that is that I don't think either I or this Court can come to that conclusion. We just don't know. I see what you're saying, but I don't think that we would. Well, our prior cases have recognized that where the jury returns a split verdict, that that tends to undercut an argument that the defendant was prejudiced by whatever the issue is that he's claiming was harmful to. And I guess in other cases, I don't think that the Ninth Circuit has held under, you know, these particular circumstances that that's something that would be taken in consideration. Again, I would just repeat myself. I think that's right. I couldn't find a case directly on point. But I do have the same concern that Judge Fischer was questioning you about,  there are times when it is better to sort of leave well enough alone and not create a problem by conducting a hearing and making a bigger issue out of it than may have been the case. Your client denied that he was eyeballing the jury and trying to intimidate anyone. And as I read the record, Judge Haddon looked at it and said, Okay, I'll accept it for the word. And then he admonished outside the presence of the jury, your client, to make sure that nothing like that would occur in the future. Why shouldn't we conclude under the abuse of discretion standard that that's good enough on this record? I would say it's not good enough, number one, precisely because Mr. Simtot denied that he was staring at the jury. And so the jury may very well have misconstrued something he was doing, and ultimately that affected its verdict. I think also, but a hearing isn't going to solve that problem, is it? A hearing isn't necessarily going to assuage the juror's concern. If the juror felt that Simtot was intimidating the juror, the only real question is whether or not the juror can continue to remain fair and impartial and render a decision based solely on the law and the evidence. Exactly, and that's what we don't know. And if you get the correct answers to those questions, then the juror stays, right? Correct, correct. What I would suggest that the judge should have done here is to question the juror, both as to whether or not he or she was unduly affected by this, and also whether or not the juror had communicated his or her concern to the other jurors. If there are no other questions, I think I'll save my time for rebuttal. All right, fine. Thank you. I'm sorry, we're not hearing. Hold on, hold on. We're not hearing you. Okay. There you go. I'm sorry, Judge. Okay, you've used up five minutes of your time. All right, I will wing it from here, then, and disregard all my prepared remarks. Okay. Your Honor, again, my name is Carl Ross, and I'm with the U.S. Attorney's Office in Great Falls. I appreciate the court allowing me to appear by video. I don't believe, Your Honors, that I have a great deal to add to the written product that has been submitted to the court. The defendant attempts to make a point that is not the nature of the conduct but the effect on the jury. That is really an issue, but I think that that still boils down to the discretion to be given to Judge Haddon in how to handle the situation. A point earlier made is, I think, extremely well taken. These sorts of things come up in a jury trial, and the judge is almost damned if you do, damned if you don't. If he granted the hearing, he would have a great risk, I think, of inquiring of a juror, and maybe that juror would say, I'm not intimidated, I haven't communicated, but then goes back into the jury room now with a much heightened, a more heightened emphasis on the topic. At the time that the court brought this to the counsel's attention and to the defendant's attention, Judge Haddon specifically said, I'm not going to draw any conclusions about this matter at this point. I think that is indicative that he did not consider the manner in which it was related to him or the text of what was related to him to be so sufficient that it required a hearing. And I think that is something uniquely in the province of the district court, to balance those types of issues as they arise and resolve them in the manner most beneficial to a fair trial. I guess I don't disagree with that, but it was you yourself who suggested to the court that the way to address it would be to question the jury, because the issue is the juror's perception. And what troubles me from what at least I see on the record from Judge Haddon is that his focus was entirely on admonishing the defendant who denied that he did it. So that left hanging the question that counsel has raised now, is that we still don't know whether the juror who took enough trouble to talk to the marshal and said he or she felt threatened ever had that issue resolved as far as they were concerned. The fact that they were admonished not to make their minds up or whatever, and I'm not sure exactly which issue Judge Haddon was addressing when he made those remarks, but even if he was addressing that to the issue of juror bias, it doesn't seem to me that it sort of shifts passing in the night. So how are we supposed to know that the judge weighed in the balance what you have said when what gets articulated is the focus entirely on admonishing the defendant for his apparent misconduct, which the judge then accepted he hadn't done. It's still left unresolved what the juror thought. So what do we do with that? Well, that is true, Your Honor. And that is, I think, the reason when I suggested to the court that a hearing be held, at that point, obviously, the court had in its mind to, again, weigh whether he was concerned enough about the effect on the juror to mourn a hearing or not. And he made the decision that either the manner in which it was communicated to him through the bailiff was not sufficiently strong to indicate a true threat or a true belief in the threat, that he didn't feel that a hearing would add anything or would possibly endanger emphasizing it, that he made that decision. And I don't believe that it is easy for this court to do it because we're looking at it in hindsight. Well, why don't we just ask the juror? But Judge Hammond, at that time, was in the middle of trial, and as a trial judge had to weigh those factors at that time, and I think that's why the standard here is an abuse of discretion. He has the discretion as to how to conduct that, and I think we have to defer to his judgment. Well, I agree with that to some point, but what troubles me is looking at both the Third and First Circuit cases who have addressed the identical issue. In both cases, the appellate panels emphasized that in neither case did the juror indicate that they felt threatened, that they felt that they were just bothered by it and wanted it to stop, as I recall. I know that was clearly the case in the First Circuit decision. So here we have a case where, in fact, the communication was that the juror did feel threatened. And when we're looking for guidance as to how you resolve that, which I agree is a very close and difficult question, but if a juror is, in fact, intimidated and feels threatened and then nothing happens in the process that alleviates that, we're left with a potential due process violation. So while there is a discretion there, we have to have some ability to look back and say, was it handled properly? So I don't know what we do with the fact of a threat. You know, when a juror says they feel threatened, whether that triggers more of a requirement here. You know, the thing that concerns me, counsel, is that I can draw from my own experience here from Montana. I presided over the Crow Nation's racketeering trials many, many years ago in Billings. I think I remember you there. You may remember we had something called an eye flashing incident, something I had never heard of. But apparently within the Crow Nation, it is a serious threat to whatever eye flashing is to do eye flashing. And we had some of that going on in that case. And I was able to, you know, query the jurors, make sure that nobody was intimidated by that behavior. The defendant, as you remember, went on to get convicted and the appeals were denied and that was the end of it. I am at, you know, I think that what Judge Tallman says is absolutely on the mark. One of the concerns as a trial judge when you have a situation like this is that you don't want to amplify the problem. In other words, you don't want, if you see that the problem is not significant, you don't want, for instance, even if you sequester a juror and bring them in and say, you know, is this going to impact your verdict? Is this going to, you know, the juror then, even if you tell the juror, don't talk to your fellow jurors about this, they go back into the jury room and then sometimes don't heed the judge's instructions because everybody is curious as to why they were called in. On the other hand, I'm a little troubled by the fact that we don't know precisely what impact this threat may have had on that juror. Because they were never asked. And I don't know because the record isn't clear here as to why Judge Haddon didn't make that inquiry. I mean, if he would have said on the record, well, I'm not doing this because I've observed the juror, I didn't see any of this myself, and I don't want to create a bigger problem, that would have alleviated some of the concern. But he didn't say anything. He just said, well, I'm not going to take a position on this, and the trial went on. That's the only thing that bothers me a bit. I certainly understand, Judge Ezra, and it is a pleasure to see you again after 20 years. You haven't aged a bit, I have. Neither have I, Judge. You're looking great, Judge. Thank you. All right. Quit trying to say that. Your Honor, it's not that I don't share the concern because, again, in hindsight, I guess we could have had Judge Hadfield do it. But there's so many elements here that we are unclear on. For example, a court security officer that was relaying the message might be a known alarmist, that the judge doesn't really think is particularly a good filter for information coming from the jurors. There's just a ton of variables involved. But I think we can still look at that verdict and say, if the defendant has succeeded either in intimidating the jurors to make them afraid of him, there should have been acquittals on everything if it affected the jury verdict. Or if they were holding it against him, they should have convicted him on everything. I think the best-flipped verdict in this particular instance is telling. And I think it is sufficient to allay, it should be sufficient to allay a lot of fears that whatever went on here did not affect the fair trial. Well, the only concern, I'll tell you I have a concern, and that is if we remanded it back for an evidentiary hearing, as counsel for appellant has suggested, I just wonder what kind of an answer, are you going to get a juror that's going to come up and say, yes, I was actually totally influenced and I ignored my oath as a juror to put personal issues aside and that's why I convicted this guy, because he just kind of made me mad and he scared me and that's why I convicted him. I just wonder what kind of a truthful answer you're going to get. It just seems to me that that would be an exercise in futility. Coupled with the fact that over a year has now passed since this trial occurred, who knows what effect time has had on the juror's recollection of the deliberations or anything else. So I tend to agree. I think that if the court finds this a serious enough error that the judge had to abuse his discretion by not taking the advice of the government to interview the juror, and again, my advice isn't, or the government's advice is not ours, it's ours to give, but certainly not the court's mandate to take. So the court very well may have said in his mind, this wasn't any big deal and I'm not going to amplify it. So I think, Your Honor, that remand for a jury inquiry at this time would be fruitless. If this is such a substantial error, I think remand for due trial would be the only true way to fix this. And frankly, I just don't see the error. Is that substantive? And the fact, again, of the split verdict indicates to me at least that this jury deliberated on each count, considered each count separately, reached a unanimous decision, and whatever intimidation went on here did not affect the outcome of this trial. Okay. I think you're a little over time. I think we have the point and it's been a useful discussion. Thank you very much. Thank you, Your Honor. Okay. I'll give you a minute. I think you have a minute or so. Whatever you have, you have for rebuttal. I guess what I would point out is I think that the government's argument somewhat speaks for itself. We don't know what effect this had, and that's why there should have at least been some sort of inquiry into the effect this may have had on the juror's state. Well, you're not taking the position that a hearing is required in every instance in which there is a suggestion that something that happened in the courtroom as opposed to an external influence on the jury requires a hearing, are you? No, no. And I think that Judge Fischer is correct. In the 630 case, I think the third or first, whatever it was, that was a case where the jurors said, I wasn't particularly intimidated. But here, according to the judge's description, the juror felt Mr. Simtot was eyeballing him or her, and that juror felt threatened. And so this is a case that I think is taken outside of those other cases, and that's why I think something should have been done to determine what effect, if any, this had on the jury. I think you suggested the evidentiary hearing, not a new trial necessarily. Do you agree with the government that if we were to agree that the proper remedy is now a new trial rather than an evidentiary hearing, that an evidentiary hearing would be futile? I mean, quite honestly, if you give Mr. Simtot another trial, he's out here anyway. I'd be happy with that. The only thing I'd say about the evidentiary hearing being futile is I think that the correct inquiry, as I understand it, isn't exactly what effect that had on the juror's mental process, but rather what effect the event had on the juror. And so you don't go inquiring to the juror, well, were you into the subject, were you so scared that you voted to convict this guy? You'd rather, what effect did this have on you? And then you draw the conclusion. And if the juror says, I was terrified, then that may very well have affected the juror. All right. Thank you very much. Appreciate it. Thank you, counsel. It's an interesting issue, and the case argued is now submitted.
judges: Fisher, Tallman, Ezra